UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LINDA A. BROWN,**                                             Chapter 13
    Debtor                                  Case No. 11-19048-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matter before the Court is the Motion for Stay Violation Sanctions against Michael F. Brown ("Brown"), through which Linda A. Brown (the "Debtor") seeks attorney's fees and $5,000 in punitive damages "in recognition of the substantial and unnecessary emotional distress" she suffered. Brown filed an Opposition to the Debtor's Motion. The Court heard the Motion and the Opposition on November 14, 2011. Following the hearing, both parties filed briefs.

    The facts necessary to decide the matter are not in dispute. Neither party requested an evidentiary hearing. Based upon the record of proceedings in this case and the undisputed facts, the Court concludes that Brown violated the automatic stay and the Debtor is entitled to an award of attorney's fees.

**II. FACTS**

    The Debtor filed a Chapter 13 petition on September 23, 2011. On Schedule H-Codebtors, she listed Brown as a codebtor with respect to Bank of America, a creditor

1

which the Debtor listed on Schedule F-Creditors Holding Unsecured Nonpriority Claims as the holder of a claim in the sum of $9,541. The Debtor indicated that the debt to Bank of America arose from a revolving credit account and that the debt was "nondischargeable pursuant to 11 U.S.C. § 532(a)(15)."[1] The Debtor filed a Chapter 13 plan with her petition in which she separately classified the claim of Bank of America for which Brown is a codebtor and proposed to pay the claim in full.[2] Brown was notified of the commencement of the Debtor's Chapter 13 case on September 29, 2011, when he was mailed Official Form B9I, "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines." Brown is protected by the codebtor stay. *See* 11 U.S.C. § 1303(a).

Several years prior to filing her bankruptcy case, the Debtor and Brown were married. They divorced in 2007. Prior to the entry of the divorce decree, they entered into a Separation Agreement which they filed with the Essex County Probate and Family Court, Department of the Trial Court (the "Probate Court"). Pursuant to their Separation Agreement, the parties agreed to the following provision, captioned "Debts":

> The Wife warrants and represents that she has not contracted any indebtedness for which the Husband is or may be liable. The Husband warrants and represents that he has not contracted any indebtedness for which the Wife is or may be liable. The Husband and Wife further warrant and represent that neither will contract from and after the date hereof any indebtedness for which the other is or may be liable, except such as has

---

[1] Debts of the kind listed in 11 U.S.C. § 523(a)(15), are dischargeable in Chapter 13 cases, *see* 11 U.S.C. 1328(a)(2), but not in Chapter 7 cases.

[2] Several objections have been filed to the Debtor's Chapter 13 plan. None seem insurmountable as they pertain to the amount of arrearages with respect to secured claims or, in the case of the Chapter 13 Trustee, calculation of the plan payment.

    specifically been assumed by the provision of this Agreement elsewhere contained, see attached Schedule of Debts. If either of the parties hereto shall be called upon to pay any obligation for which the other shall be liable, he or she shall promptly give notice to the other party, who shall have the opportunity in good faith and at his or her expense to defend any such claim. *If either party shall nevertheless be called upon to pay any such claim, the other party shall indemnify and hold him or her harmless therefrom*, including attorneys, [sic] fees and related expenses. The parties represent that neither of them has nor will hereafter use or utilize the other's name or business name for purposes of having credit extended to him or her.

(Emphasis supplied). The Schedule of Debts attached to the Separation Agreement included a debt to Bank of America which the Debtor acknowledged was her responsibility and would be paid by her.

On February 19, 2008, the parties entered into a Stipulation which was filed with the Probate Court. Pursuant to the Stipulation, the parties acknowledged that the Debtor was responsible for the debt arising out of the use of the Bank of America credit card and that Brown's name would be "forthwith removed from the credit card and the company's records."

The Debtor was unable to maintain payments to Bank of America and, on May 1, 2008, Brown filed a Complaint for Civil Contempt. On June 17, 2008, the Probate Court found that the Debtor was not guilty of contempt. The court, however, ordered that "the defendant [the Debtor] shall make no further charges against the Bank of America account . . . and she shall pay $375.00 per month until the card balance is paid in full."

The Debtor was unable to make the monthly payments to Bank of America. Prior to filing her bankruptcy petition, her counsel contacted Brown to advise him of the

3

Debtor's intention to file a Chapter 13 petition. According to the Debtor, "Counsel informed Mr. Brown that, as a co-debtor on the Debt, he would be receiving notice of the Debtor's petition from the Court, and that if he had any questions regarding the details of those documents he should seek independent counsel."

On September 26, 2011, three days after the Debtor filed her petition, Brown filed a Complaint for Civil Contempt against the Debtor. The Probate Court issued a contempt summons on October 6, 2011 and scheduled a hearing for November 10, 2011.

On October 17, 2011, Debtor's counsel contacted Brown and advised him that the filing of the Complaint for Contempt violated the automatic stay. Recognizing that the Complaint for Contempt was filed before Brown received the Notice of Chapter 13 Case, which was mailed to him by the Bankruptcy Noticing Center on September 29, 2011, and that he was acting pro se, Debtor's counsel advised Brown to engage counsel and that he would not request sanctions from this Court if Brown dismissed his Complaint for Contempt prior to October 24, 2011. Shortly after that conversation, Debtor's counsel was contacted by Attorney Eric MacLeish, with the firm of Clark, Hunt, Ahern & Embry, who informed Debtor's counsel that he represented Brown.

On October 24, 2011, the Debtor filed a Notice of Bankruptcy in the Probate Court. On October 31, 2011 Brown filed a notice of voluntary dismissal of his Complaint for Contempt.

Despite dismissal of the Complaint for Contempt, the Debtor maintains that she is entitled to attorney's fees in the sum of $3,405 relating to legal services needed to obtain

4

dismissal of the Complaint, which occurred only after the filing of the Motion for Stay Violation Sanctions on October 25, 2011.

### III. DISCUSSION

The Debtor maintains that Brown violated the automatic stay. Brown maintains that he was not attempting to collect a debt or other property and was merely seeking "to enforce the terms of the parties' contract (i.e., the Stipulation they entered into in February 2008) in an effort to salvage his declining credit rating." He asserts that he does not have a "claim" within the meaning of 11 U.S.C. § 101(5) and, therefore, did not violate the automatic stay. He is wrong.

The term "claim" is broadly defined as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The parties' Separation Agreement and Stipulation resulted in a new legally enforceable obligation pursuant to which the Debtor assumed responsibility for their joint debt to Bank of America. Their Separation Agreement contained a hold harmless provision and created a "debt." As the United States Supreme Court explained:

A "debt" is defined in the Code as "liability on a claim," § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment," we have said, "is nothing more nor less than an enforceable obligation." Those definitions "reflec[t] Congress' broad . . . view of the class

5

of obligations that qualify as a 'claim' giving rise to a 'debt. . . .' "

Cohen v. de la Cruz, 523 U.S. 213, 218 (1998) (internal citations omitted); *see also* Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) ("We have previously explained that Congress intended by this language to adopt the broadest available definition of 'claim.'").

In Gibson v. Gibson (In re Gibson), 219 B.R. 195 (B.A.P. 9th Cir. 1998), the United States Bankruptcy Appellate Panel for the Ninth Circuit held that a debt incurred in connection with a Separation Agreement was a claim, even if the debt was payable to a third party.[3]  It stated:

---

[3] The facts in Gibson are analogous to the facts here, except that Gibson involved the issue of whether the debt was nondischargeable under 11 U.S.C. § 523(a)(15) in the debtor's Chapter 7 case.  The pertinent facts and holding are as follows:

> During their marriage, Michael A. Gibson, the Debtor, and his former spouse, Pattianne Gibson, borrowed money (the "Note") from Robert Perdue, the Debtor's stepfather. When the parties ended their marriage, the Ohio domestic relations court's final Dissolution Decree incorporated their Separation Agreement, which provided the Debtor "shall pay" the Note. The Debtor filed bankruptcy and included Ms. Gibson and his stepfather as creditors. Ms. Gibson, who had been sued by the stepfather for her failure to pay the Note, filed an adversary proceeding to determine the Debtor's obligation on the Note to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and § 523(a)(15). The bankruptcy court granted the Debtor's motion for summary judgment and determined the Note to be dischargeable pursuant to both § 523(a)(5) and § 523(a)(15). Ms. Gibson appealed both determinations of the bankruptcy court. The Panel affirms the bankruptcy court's determination that the Note is dischargeable pursuant to § 523(a)(5), although for different reasons than those relied upon by the bankruptcy court. The Panel reverses the bankruptcy court's determination that the Note is dischargeable pursuant to § 523(a)(15) and remands the case for further proceedings.

6

> A debtor's obligation as part of a decree or separation agreement to pay a third-party obligation directly to a spouse or to hold a spouse "harmless" on a third-party obligation are frequent examples of incurring a debt which satisfies the qualifying language of § 523(a)(15); however, the determination of whether a debtor incurs a debt in connection with a Separation Agreement or Dissolution Decree is not limited to the use of hold harmless or other specific indemnification language. A debtor may, and frequently does, incur such an obligation in accordance with applicable nonbankruptcy law. Although it is clear from the jurisdiction granted exclusively to the bankruptcy court to determine § 523(a)(15) issues (11 U.S.C. § 523(c)(1)) that federal law governs the ultimate determination of the issues raised by this Code provision, an analysis of applicable nonbankruptcy law is a required component of the initial determination of whether a debt has been incurred which satisfies the qualifying language of § 523(a)(15).

In re Gibson, 219 B.R. at 202-03. *See also* Dunne v. Lind (In re Dunne), No. 1:09-cv-282, 2010 WL 1462504 (W.D. Mich. April 12, 2010). The Court finds that the Debtor incurred a debt to Brown in connection with the Separation Agreement and Stipulation filed in the Probate Court. The parties' Agreement referenced "Debts" and the Stipulation simply reinforced the Separation Agreement. Neither party disputed that the Bank of America obligation was part of the Separation Agreement and Stipulation for purposes of § 523(a)(15). Accordingly, Brown holds at least a contingent claim against the Debtor, and his Complaint for Contempt in the Probate Court was an attempt to prevent Bank of America from seeking collection of the debt from him by coercing the Debtor to pay the debt, despite the pendency of her Chapter 13 case.

In Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969 (1st Cir. 1997), the

---

219 B.R. at 197.

United States Court of Appeals for the First Circuit discussed the automatic stay, stating:

> The automatic stay is among the most basic of debtor protections under bankruptcy law. *See* Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986); *see also* S.Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840. It is intended to give the debtor breathing room by "stop[ping] all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; *see also* Holmes Transp., 931 F.2d at 987; In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir.1982).
>
> The stay springs into being immediately upon the filing of a bankruptcy petition: "[b]ecause the automatic stay is exactly what the name implies-'automatic'-it operates without the necessity for judicial intervention." Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113 (1st Cir.1994). It remains in force until a federal court either disposes of the case, *see* 11 U.S.C. § 362(c)(2), or lifts the stay, see id. § 362(d)-(f). This respite enables debtors to resolve their debts in a more orderly fashion, *see* In re Siciliano, 13 F.3d 748, 750 (3d Cir.1994), and at the same time safeguards their creditors by preventing "different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." Sunshine Dev., 33 F.3d at 114; *see generally* 3 Collier on Bankruptcy ¶ 362.03 (15th rev. ed. 1996).

107 F.3d at 975. The First Circuit also observed that "courts must display a certain rigor in reacting to violations of the automatic stay." Id. at 975-76.

In Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265 (1st Cir.1999), the First Circuit noted that a good faith belief in a right to act is irrelevant to the determination of whether the act violates the automatic stay. Id. at 268–69. "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) [now 11 U.S.C. § 362(k)] is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Id. at

269.

Applying the principles established by the First Circuit to this case, it is evident that Brown violated the automatic stay and his good faith belief or that of his attorney that he did not hold a claim and was not subject to the automatic stay is not relevant to whether the automatic stay was violated. He had knowledge of the automatic stay, and he intended the acts that constituted a violation of the stay. *See* Varela v. Ocasio (In re Ocasio), 272 B.R. 815, 824 (B.A.). 1st Cir. 2002). Accordingly, the Court finds that the Debtor is entitled to reimbursement of her attorney's fees as a remedy for violation of the automatic stay. *See* 11 U.S.C. § 362(k).

Counsel to the Debtor submitted an Amended Claim for Attorney's Fees to which he attached a description of services broken down by date, hours worked in six minute increments, and the applicable rate. In sum, the Debtor seeks fees in the total amount of $3,405 for 15.3 hours of work at the rate of $225 per hour with the exception of 0.3 hours billed at $100 per hour. All the services performed except for 2.2 hours, were performed after Brown engaged legal counsel. Moreover, $1,687.50 in fees were incurred after the filing of the Motion for Stay Violation Sanctions.

The Court finds that the time expended and fees incurred are reasonable and warranted under the circumstances. The Court, however, denies the Debtor's request for punitive damages in the sum of $5,000. The Debtor submitted no evidence to support emotional distress damages or an award of punitive damages.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Debtor's Motion for Stay Violation Sanctions.[4]

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: January 3, 2012

---

[4] The Debtor did not reference 11 U.S.C. § 362(k) in her motion or brief. Section 362(k) permits "an individual" injured by a willful violation of the automatic stay to obtain damages. Alternatively, as the court noted in In re Sayeh, 445 B.R. 19 (Bankr. D. Mass. 2011),

> A violation of the automatic stay, which is an injunction, may also be remedied by contempt process issued pursuant to the Court's authority under 11 U.S.C. § 105(a). Havelock v. Taxel (In re Pace), 67 F.3d [187]at 193 [(9th Cir. 1995)]. Contempt was the only means for enforcing the automatic stay before § 362 was amended in 1984 to permit individuals also to proceed by motions for damages. By virtue of 11 U.S.C. § 105(a), a bankruptcy court has subject matter jurisdiction to employ civil contempt to enforce the automatic stay; though the stay is a statutory injunction, it is deemed to be an order of the court and enforceable as such by contempt. Id.; Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 445 (1st Cir.2000) ( § 105 provides a bankruptcy court with contempt power to enforce the discharge injunction). The contempt power conferred by § 105(a) includes the power to compensate the injured party for losses sustained, one of the powers of "civil contempt." Id. at 445 (recognizing that bankruptcy courts have appropriately used their contempt power to award actual damages and attorney's fees); Eck v. Dodge Chemical Co. (In re Power Recovery Systems, Inc.), 950 F.2d 798, 802 (1st Cir.1991) ("sanctions in a civil contempt proceeding are employed . . . where appropriate, to compensate the harmed party for losses sustained").

445 B.R. at 27-28 (footnote omitted). The Debtor has established her entitlement to sanctions under either § 362(k) or § 105.

10